Good morning, John Webster appearing for Courtney Gordon, the appellant. May it please the court, in this case I would like to suggest that there are two compelling public policy considerations as well as two very compelling factual reasons for this court to overturn the decision of the district court. Preliminarily, the district court held that training costs of the employer to be equivalent to commute costs or the cost of casual business attire. I believe that that is incorrect and that rule simply could eviscerate the entire concept of the Federal Labor Standards Act. Essentially, all employers have training costs and the employer who charges the employee for the cost of that training can literally eviscerate the FLSA protections by that agreement. You're not suggesting that they never have. Are you? I'm sorry? You're not suggesting that an employer can never impose the costs of training on an employee. I am suggesting they'll be compliant. I am suggesting that I think the rule should be that any imposition of training costs should be automatically suspect. I don't understand what that means. I mean, we're here in court, so we must be suspect enough to survive, you know, survive a little bit. What does that mean? Well, I mean to say that it should be the employer's burden then to prove that their training reimbursement agreement does not violate the FLSA. That is, if it were to be the employee's burden, I think that that employee then would be taxed or would be deprived of the internal records of that employer. So I think it should be the rule of decision that the employer bears the burden to show what training costs it incurs. And is it go ahead. You've got it. No, no. Go ahead. Counsel, as I read the record, counsel, I didn't ever find any paycheck in the record where your client was not paid for every hour she worked. I agree. So stipulate. And I didn't find any evidence in the record that in each paycheck she got much more than the minimum wage. I agree. So in every one of these situations, even the last paycheck where she worked 20 hours, she was paid way above the minimum wage for the hours she worked. I agree. And so at that point in time, given that she received more than the minimum wage for what she worked, what's the beef? The beef is each wage period stands alone under the regulations. Under 29 CFR 776, I believe, is the regulation that each work week stands alone. In the last work week, she made $817 gross wages. At that same time period, the city held a claim of $6,400 for its training cost reimbursement. In addition, the city seized my client's compensatory time off, which is earned, as you know, by her service on overtime. But it served. You agree that that did not cause her last paycheck to go below minimum wage? It does, in effect. Well, the withholding of the accrued leave or whatever, the two checks, did not cause her to go below the minimum wage, putting aside the reimbursement for the training costs that remained. Okay. Right? Well — I mean, there's just the math is that it didn't cause her last week's pay to fall below minimum wage. You disagreed with that. Well, I don't, because it causes the $6,400 claim cruise in that last work week, where she makes $817. And that is what the FLSA violation is. Well, but the bottom line is, as much as you want to argue about it, in the last weeks, she worked 20 hours. In the last week, she was paid $3,780 an hour. She made more than the minimum wage. They did not take that, didn't take any part of it. In fact, she was paid for every bit of it. All they did was take other benefits that had accrued. Well, I — That's all they took. I mean, she got paid for the 20 hours, more than the minimum wage. All you're arguing is, as I understand it, that accrued benefits from past periods were taken as a result of the training that she had agreed to pay, and therefore, somehow the minimum wage is affected. Well, first of all, under 29 CFR 531.35, the employer has to pay free and clear. This is what this case is about. The employer failed to pay free and clear, because it didn't pay the $817 on her last paycheck, free and clear of its claim for $6,400. And that's where, if you look at this case in terms of a spectrum, the Arriaga-Rivera-Brickman cases all look at the beginning where the employer basically required the employee to purchase things. In those courts, in the Fifth District, I believe, in Arriaga, the court there said it is a deprivation of the federal minimum wage when you're expecting your employees to advance the costs that primarily benefit you as the employer. And here, we have the latter section of the spectrum, where those costs, the $6,400, is deducted, or basically subtracted from her last work week. But it wasn't subtracted in her last work week. It is the demand. It is the — it is — if you look at 531.35, it says it shall be paid free and clear. And to the degree that the wage is not paid free and clear, an FLSA violation results. And that's why, effectively, this is — But if it was paid free and clear, the fact that she owed some money otherwise didn't mean that that last paycheck was not paid free and clear. It was not, in my opinion, paid free and clear, because the city still had claims in the amount of $6,400, and said, you will pay it, and, indeed, started taking my client's vacation pay and took her comp pay. But wouldn't they be true if the employer had loaned or advanced your client the same amount of money for whatever the purpose? Well, I think that it would, in essence, be true, because the primary benefactor is the employer in the training. My question is, if for any purpose, including, you know, an employee comes and just says, I've got medical expenses, I've got whatever, will you loan me money? Medical expenses are — Okay. You know, I want to buy a dog. I mean, it doesn't make any difference what it is. My question is, if the employer made a loan to the employee, would your position be the same? My position remains the same, in the sense that the analysis is the same. Okay. So the employer can't make a loan to an employee without it — making the last paycheck. No. The employer — no. The employer can make a loan. Here's the analysis. And the Department of — the United States Department of Labor has spoken on this issue — is that the employer cannot benefit in any manner from the loan. And that's why the Department of Labor has specified that you have to have — the employer's burden is to make certain that its records show it did not benefit in any manner from any deduction or claim or loan to the employee. And so I think that — Wouldn't that apply to any paycheck along the way? Yes. Because each pay period stands alone. So each pay period has to be paid free — So for every paycheck that was made to this person, it was a violation of the — Exactly. Exactly. Because what happens is — In effect, you can't make a loan to the employee without violating the Fair Labor Standards Act. If the — the benefit of that loan is the — if the employer participates as a primary beneficiary, that's the standard under the FLSA, is that the employer — if the employer is the beneficiary, then they — it is a kickback under 531.35. So it doesn't matter to you in your argument when the $6,400 would accrue? I think it does in this particular instance. I believe that if my client left the very first day — and this is the real kicker here — is she would have been charged with $8,000 and never have even made $8,000. And in this particular circumstance, is that each — having the Department of Labor say each pay period stands alone, then each pay period has to be looked at. And when the violation accrues is when the city's final demand issues, which in this case is the last paycheck. Just because the city finally demands something doesn't mean that the obligation has not accrued prior to that. There's no law that suggests that. Well, I think that the time is when it's — the city expects — I mean, my worry with your argument is, seems to me, the $6,400 accrued in every pay period. And I don't see why in those particular situations, given the general law, she was paid greater than minimum wage in every pay period for the hours she worked, that this then causes a problem. I'm trying to find that. I mean, I look at Heater. I look at Brennan. I look at Hasse. I look at Kale. Kale is the closest. But Kale, they took the whole check. But it is not — if you look at Mayhew — first of all, let's look at Heater. Heater does not even discuss the FLSA. And I think that was — Well, that's not exactly true. Because when I read it, the court explicitly refers to the FLSA in connection with both the minimum paycheck requirement and collecting as an ordinary creditor. Correct. Right in the decision. But it talks in that case, as I recall, about the payment of overtime for that firefighter. That is the essence of — Heater is based on the Wisconsin non-competition clause. That is the reason that that decision issued was Wisconsin. Frankly, I believe that in Heater, Easterbrook persuasively argues that the form of payment for training should not take precedence over its function. I think that's what he says. Okay. Well — Tell me why I'm wrong. I believe that there is an unbroken line of case precedent — or, I'm sorry, of Department of Labor opinion letters that all stand for the proposition that the employer cannot be a beneficiary and demand either the employee pay for money, which is the case in Arriaga and Rivera. That review had the effect specifically of reducing the amount of the pay below minimum wage, which this does not. Yes, it does. If you look at the $6,400 and you — Sure. But no paycheck was below minimum wage. Right. In Chao, in all of the cases, it's the demand. Chao is, I think, one of the closer cases where the Secretary of Labor said, you cannot do this. Well, but in Chao, as I said — I called it CAO — but in Chao, the whole paycheck was taken. Correct. It wasn't just they were paid the minimum wage plus and got it all, and all they took was the accruing benefits. In that case, the whole check was taken, which would make it, I think, directly applicable here. And since your client got her check and all the benefit and every bit of the wage and much more than the minimum wage, then Chao would go the other way. It would say, you're out. Well, obviously, I don't think — if you look — if the court looks to the deprivation of an entire check, I think that's the wrong analysis. I think you have to look at each check. And to the degree that the employer's claim reduces that amount to below the minimum wage, then that's a violation. I think if you look at Mayhew, it is — Mayhew speaks specifically about the effective rate of pay. And to the degree that the employee has to recoup or pay back the employer for the loss from other sources, it's the effective rate of pay that is the reduction that causes a violation. I think Mayhew is critical on that issue. All right. Thank you. Thank you. Mr. Webster. Wenzel. Good morning. Mike Wenzel on behalf of Appelli City of Oakland. May it please the Court. The Court's decision on the issue presented today obviously will have a far-reaching impact. The plaintiff seeks to challenge what amounts to a mutually beneficial loan agreement used throughout the state, collectively negotiated, bargained for. Finding the reimbursement provision invalid will negatively impact employers and employees. The only clear thing is that it will benefit this particular employee who knew what she was getting into, received the benefit of her bargain in a post-certified training certification, and then after the fact voluntarily decided to leave for whatever reason and doesn't want to pay it back. She will benefit. Employers will not benefit. Employees will not benefit. This will have an effect on — given the budget crisis that exists in California today with municipalities, it is clear that the result of finding this provision invalid, which is widely used throughout the state, will result in municipalities thrusting that cost on the employee itself. It's certainly in this economic environment not difficult to find people searching for employment. And to place that cost on the employee is the natural reaction to a decision that this is improper. And that will serve to really go against what the FLSA is designed to protect. Those individuals who don't have the economic means to finance their own post-certification will be prevented from applying for employment with the City of Oakland. This case — But on this particular matter, given what we have in front of us and given the motion made and given the district court's decision, we really can't suggest that this is training that's for the benefit of the city. Because the motion in front of us was the motion to dismiss for failure to state a claim. And in review of those motions, I've got to accept all the allegations that the complaint is true, don't I? Well, yes. And I think you — So at that point in time, for this particular motion, I've got to suggest that this was primarily for the city's benefit. And then make my decision. We're not going to be arguing about whose benefit it is or the motion for judgment on the failure to state a claim. I don't give it the right standard to review. Well, approaching it from that angle, I think, Your Honor, has already characterized the main thrust of the problem with plaintiff's theory, that Judge Alsop considered twice and rejected twice, that the Hasse Court considered. Specifically that in this case, this employee received more than the minimum wage in every single paycheck. The minimum wage provision of the FLSA is designed to provide protections to employees, to make sure that there's a standard of living that is maintained. It's for — it's to protect exploited employees who don't have bargaining power. That's clear. Every decision that considers the training — the training reimbursement provision focuses in on the issue of whether or not the individual received wages in their paycheck equating to minimum wage. The Chau case, for instance, relied on the fact that the entire paycheck was taken. In fact, that decision brought by the Secretary of Labor made no commentary on the general idea of a training reimbursement provision. The Secretary of Labor could have gone farther in that decision and sought to invalidate any sort of structure of that sort. That was not the complaint. The complaint was, you're depriving these individuals of a minimum level of pay. And regarding the issue of free and clear, I think the Court said it in a way that I would clearly agree with, that she received the use of these wages to pay her minimum bills for whatever she needs the money for. She received far in excess of the minimum wage, even in her last paycheck. And that a claim against her is not the equivalent of restricting her use of those wages. She was actually paid in excess of the minimum wage. And that distinguishes this case from the other cases. It distinguishes it from the Department of Labor decisions. And if you look at those Department of Labor decisions, I believe the one in 2005 actually cites HEDR. It cites HEDR with approval. And the interesting thing is that plaintiffs or appellants suggested that HEDR did not address the FLSA in any way, shape or form. But I think the opinion considered the training reimbursement provision in the context of the FLSA and actually stated, with respect to the training reimbursement provision, that there needed to be payment equal to or in excess of the minimum wage. That wage and hour decision did not cast any sort of criticism on the HEDR opinion and relied on it. And the fact that the wage and hour division decision is relying on HEDR, to me suggests that they agreed that HEDR contemplated this type of provision in the context of the FLSA, which certainly Hassey obviously did as well. And Hassey considered these same arguments and rejected them. This, the purpose of the FLSA is not designed to step into this type of beneficial situation. It's not, it doesn't state what a plaintiff or appellant claims it states. And I think you need to twist it around in order to come to the conclusion that he has. And I think it's important to note that all of the arguments and the opinions and authorities cited all support what the way the city arranged their agreement here. Suppose that all but $50 was taken from that last paycheck. Would you say that then there has been a violation of the Fair Labor Standards Act? I think based on the weight of authorities that had they done that, yes, that that would have been a violation because her pay in the paycheck would have been below minimum wage. Okay. All right. Thank you, counsel. Thank you. Both of you for your arguments. The matter just argued will be submitted.
judges: Hug, Rymer, Smith N. R.